GARTSIDE COAL COMPANY

*v.*

WILLIAM TURK.

*Filed at Mt. Vernon October 27, 1893.*

1. PRACTICE—*directing what the verdict shall be.* It is only where the evidence, with all fair and legitimate inferences arising therefrom, is so far insufficient to sustain a verdict for the plaintiff that the court must set it aside if rendered, that the court will be justified in directing a verdict for the defendant. If there is evidence which fairly tends to sustain the issues on plaintiff's behalf, the court should not direct a finding for the defendant.

2. The weight and degree of credit to be given to the evidence fall within the province of the jury, and when their finding of fact has been approved by the trial court, and its judgment affirmed by the Appellate Court, the only question raised in this court by an instruction seeking to take the case from the jury will be, was there any evidence fairly tending to establish a right of recovery by the plaintiff. If there was, the finding of the trial and Appellate Courts is conclusive as to its sufficiency to support the verdict.

3. MEASURE OF DAMAGES—*when compensatory, only, are recoverable.* Punitive or vindictive damages should not be given when the act complained of is unaccompanied with malice, violence, willful negligence or wanton disregard of duty.

4. SAME—*instruction construed, as to whether it authorizes exemplary damages.* On the trial of an action to recover for a personal injury from mere negligence, an instruction telling the jury that if they found the case proved, etc., they should find the defendant guilty, and assess the plaintiff's damages at such an amount as, from all the circumstances disclosed by the evidence, would, in their judgment, be just compensation to the plaintiff for the injury sustained by him: *Held,* that the instruction did not authorize the finding of any other than compensatory damages for the injury sustained.

5. The instruction further told the jury, that in determining the amount of damages, if they should find for the plaintiff, they might and should take into consideration all the facts and circumstances attending the injury, as disclosed by the evidence. The instruction further told the jury what might be considered in fixing the damages, thus: "the nature and extent of the plaintiff's injury; his pain and suffering, if any, resulting from such injury; the permanent nature of the disability caused thereby, if you (they) find the disability to be permanent;

any pain or suffering or future inability to labor or transact business, if you find that any such will be sustained by the plaintiff in consequence of the injury; and the amount of money, if any is found, necessarily paid by plaintiff in and about being healed or cured of the injury:" *Held,* that the instruction could not be understood as authorizing any other than compensatory damages.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. A. K. VICKERS, Judge, presiding.

Messrs. WALKER & EDDY, and Messrs. SMITH, McELVAIN & HERBERT, for the appellant:

The instruction in respect to the measure of damages was too broad. Such instructions have been condemned. *Heimsoth* v. *Anderson,* 16 Ill. App. 151; *Drohn* v. *Brewer,* 77 Ill. 280; *Peoria Bridge Ass.* v. *Loomis,* 20 id. 235; *Keightlinger* v. *Egan,* 65 Ill. 235; *Pierce* v. *Millay,* 44 id. 189; *Fisher* v. *Jansen,* 128 id. 549.

The evidence is not sufficient to sustain the verdict. *Whittaker* v. *Coombs,* 14 Bradw. 498.

As to whether the direction of Biggs was the proximate cause of the injury, see Wharton on Negligence, sec. 134; *Cuff* v. *Railroad Co.* 35 N. J. 117; *Railroad Co.* v. *Keighron,* 74 Pa. St. 320; *Insurance Co.* v. *Tweed,* 7 Wall. 52.

Mr. R. J. STEPHENS, and Messrs. HILL & MARTIN, for the appellee:

The motion to instruct the jury to find for the defendant was properly overruled. *Railway Co.* v. *Snyder,* 128 Ill. 655; *Railroad Co.* v. *Johnson,* 135 id. 641; *Bartelott* v. *Bank,* 119 id. 259; *Pennsylvania Co.* v. *Backes,* 133 id. 255; *Frazer* v. *Howe,* 106 id. 563; *Pennsylvania Co.* v. *Conlan,* 101 id. 93; *Railway Co.* v. *O'Connor,* 115 id. 254.

The case, on the present hearing, must be determined upon the evidence found in the present record, and the court can not look into the record on the former appeal to ascertain

what the facts of the case are, or whether they are the same as before.   Neither are the conclusions of fact announced on the former hearing to be accepted as conclusive for the present hearing. *Railway Co.* v. *Lee,* 87 Ill. 454; *Fairbury* v. *Rogers,* 98 id. 554; *Railway Co.* v. *Moranda,* 108 id. 583; *Railway Co.* v. *Bouck,* 33 Ill. App. 123.

The instruction was proper.   *Steel Co.* v. *Martin,* 115 Ill. 374; *Railroad Co.* v. *Payne,* 59 id. 534; *Fisher* v. *Jansen,* 128 id. 549.

Mr. Justice Shope delivered the opinion of the Court:

This was an action for personal injury, alleged to have been sustained by appellee through the negligence of appellant. Appellant offered no evidence, but at the close of appellee's case requested the court to instruct the jury to return a verdict for the defendant.

It is insisted, first, that the evidence wholly fails to support the charge of negligence made in the declaration; second, that the accident arose from the unauthorized interference of a fellow-servant, that such act of the fellow-servant was the proximate cause of the injury, and the negligence of appellant, if any was attributable, was remote; third, that the court erred in instructing the jury as to the elements entering into the measure of damages.

The refusal of the court to instruct the jury as to their finding is the principal ground relied upon for reversal.   It has been repeatedly held, and is a settled rule of practice, that it is only where the evidence, with all fair and legitimate inferences arising therefrom, is so far insufficient to sustain a verdict for the plaintiff that the court must set it aside if rendered, that the court will be justified in directing a verdict for the defendant.   *Simmons* v. *Railroad Co.* 110 Ill. 346; *Railway Co.* v. *Lewis,* 109 id. 120; *Goodrich* v. *Lincoln,* 93 id. 360; *Phillips* v. *Dickerson,* 85 id. 11; *Railroad Co.* v. *Johnsen,* 135

id. 641; *Purdy* v. *Hall*, 134 id. 298; *Pullman Palace Car Co.* v. *Laack*, 143 id. 242. If there is evidence which fairly tends to sustain the issues on plaintiff's behalf, it follows, therefore, that the error is not well assigned. As said in the case last cited: "The weight and degree of credit to be given to the evidence fall within the province of the jury, and when their finding of fact has been approved by the trial court, and its judgment affirmed in the Appellate Court, the only question raised in this court by an instruction seeking to take the case from the jury is, was there any evidence fairly tending to establish a right of recovery by the plaintiff. If there was, the finding of the trial and Appellate Courts is conclusive as to its sufficiency to support the verdict."

Appellant is operating a coal mine, and as the cars are hoisted the coal is dumped into what is called a "shaker," for the purpose of screening it, the fine coal passing through the screen, and the coarse passing over and falling into a car placed in position. The "shaker" or screen is given a motion at its higher end by means of eccentrics upon an axle, whereby the upper end is raised a few inches and permitted to fall. The power to produce this motion is communicated from a single cylinder engine, situated some distance below the level of the "shaker." The engine was in charge of what was known as a "top man," stationed on the roof above the engine, and controlling it by means of a rod connecting with the throttle-valve, by means of which he is enabled to control the amount of steam in the cylinder. As the cars of coal were dumped into the "shaker" the engine would sometimes stop on the center, when it was required to be started by hand. This was ordinarily done by taking hold of the fly-wheel and carrying the engine off the center, or pinching it past the quarter, so that the steam would have power to operate it. Appellee, of the age of eighteen years, and unused to machinery, entered the employ of appellant on Friday, and was told by the superintendent of the company, in charge, to assist in the operation

of the "shaker" and in loading coal, and that the men "up there" would tell him what to do. On that day the engine stopped several times, owing to the weight of the coal on the "shaker" checking the engine on the center. It was started by a workman in the manner described, who told appellee that that would be his work as soon as he became better acquainted with it. No work was done on Saturday. On Monday the same thing occurred with the engine, and appellee saw the workman before mentioned start it. About three o'clock in the afternoon of Monday, the workman Jones was adjusting coal on the car upon the outer track, when, from the same cause, the engine again stopped, whereupon Biggs, the "top man," called out, "Boys, start the machine," or "Start the engine." Jones not going at once, appellee, being nearer, went into the engine room and endeavored to move the fly-wheel, but failed to do so. Jones at that moment coming in, opened the throttle-valve so as to give the full force of steam. That not starting the engine, the "top man," who was looking down through a hole in the roof, directed appellee to get an iron bar and pry the engine off the center, by placing it under the crank. Appellee procured the bar and held it up, and asked the "top man" if that was the bar he meant, who replied in the affirmative. It seems clear that this was after the throttle-valve had been opened, and that the "top man" must have known it. Steam was issuing from the cylinder head, and he was in a position, as shown, to see and know what was going on in the engine room. Appellee placed the bar as directed, and succeeded in starting the engine. From the great pressure of steam it started quickly and with great force, catching appellee on the iron bar, throwing him partially over the fly-wheel and into the gearing connecting the engine with the shaft running to the "shaker." The arm of appellee was caught in the cogs and so mangled that amputation became necessary.

That the steam could readily have been controlled by the "top man" by means of the wheel at the top of the rod connecting with the throttle-valve, is admitted. Appellee had been told by the superintendent that the workmen there would direct him what to do. It is not argued by counsel, or suggested even, that the "top man" was not a vice-principal. It is, however, contended, that Jones, the other workman, and who opened the throttle-valve, was a fellow-servant with appellee, and that his act of opening the throttle-valve was the cause of the accident, and therefore appellant is not liable. Without pausing to determine whether the direction of the superintendent would make the workman, Jones, or whoever was operating the engine and "shaker," vice-principals as to appellee in respect of the direction given him in and about the work, it is sufficient to say that the injury to appellee arose, directly and proximately, from his obedience to the order and direction of the person in charge of the engine, after the throttle-valve had been opened. That appellee was unused to machinery, and unaware of the danger to which he exposed himself by the use of the iron bar as directed, was shown, and there is evidence from which the jury might have found that the "top man" knew, or by the exercise of ordinary diligence might have known, of the valve being open, and of the hazard to appellee in the course pursued. Conceding, as counsel in effect do, that appellant is liable for the negligence of the "top man," it becomes at once apparent that the instruction was properly refused.

The only other contention that need be noticed relates to the instruction given on behalf of appellee. It is objected that the instruction is too broad, and authorized the jury to include in their finding exemplary or punitive damages, and *Heimsoth* v. *Anderson*, 16 Ill. App. 15, and *Keightlinger* v. *Egan*, 65 Ill. 235, are cited in support of this contention. Those cases determined the question then before the court correctly, but are distinguishable from the case at bar. The instructions

were there condemned because, as held, they were broad enough to authorize the jury to give other than compensatory damages. It is everywhere recognized that punitive or vindictive damages should not be given where the act complained of is unaccompanied with malice, violence, willful neglect or wanton disregard of duty. (*Drohn* v. *Brewer*, 77 Ill. 280; *Peoria Bridge Ass.* v. *Loomis*, 20 id. 235; *Pierce* v. *Millay*, 44 id. 189; *Jones* v. *Jones*, 71 id. 562.) The instruction complained of was not susceptible of the construction placed upon it by counsel for appellant. By it the jury were told, that if they found the case proved, etc., they should find the defendant guilty, "and assess the plaintiff's damages at such an amount as, from all the circumstances disclosed by the evidence, would, in your judgment, be just compensation to the plaintiff for the injury sustained by him," thus limiting the recovery to just compensation for the injury sustained. It is true the instruction proceeds, that "in determining the amount of damages, if you shall find for the plaintiff, you may and should take into consideration all the facts and circumstances attending the injury, as disclosed to you by the evidence." It is to be observed, however, that the facts and circumstances to be taken into consideration are those "attending the injury," not those attending the accident. Moreover, the instruction proceeds to tell the jury, specifically, what may be considered, thus: "the nature and extent of the plaintiff's injury; his pain and suffering, if any, resulting from such injury; the permanent nature of the disability caused thereby, if you find the disability to be permanent; any pain or suffering or future inability to labor or transact business, if you find that any such will be sustained by the plaintiff in consequence of the injury; and the amount of money, if any is proved, necessarily paid by the plaintiff in and about being healed or cured of the injury." It is impossible to conceive how the jury could have been misled by this instruction to the prejudice of appellant.

The contention that there is a failure to prove the case made by the declaration is not well founded.

Finding no prejudicial error in this record the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*